JEWELL v. GENERAL AIR CONDITIONING CORP.

5-938                                    289 S. W. 2d 881

Opinion delivered April 30, 1956.

[Rehearing denied May 28, 1956.]

Richard W. Hobbs, for appellant.

House, Moses & Holmes and E. B. Dillon, Jr., for appellee.

MINOR W. MILLWEE, Associate Justice. Appellee, General Air Conditioning Corporation, is a contractor and wholesale distributor of air conditioning and refrigeration equipment at Little Rock, Arkansas, and will hereinafter be referred to as "General." Appellants, Nat F. Jewell and wife, hereinafter called "Jewell," are partners in the sale and installation of air conditioning and refrigeration equipment at Hot Springs, Arkansas. Jewell was a dealer in equipment sold by General from 1951 to 1953, inclusive, and the parties joined in several contracts for the installation of such equipment.

On November 23, 1954, General brought suit against Jewell to reopen, surcharge and restate an alleged account stated entered into by the parties October 12, 1953, under which alleged errors in Jewell's favor occurred either through mutual mistake of the parties or by a mistake of fact on the part of General and fraud on the part of Jewell. The answer of Jewell pleaded an accord and satisfaction or compromise of the accounts between the parties as a complete defense to the suit. This appeal is from a decree in General's favor in the sum of $3,091.00.

Jewell first contends the chancellor erred in refusing to hold that a written settlement of accounts executed by the parties constituted an irrevocable accord and satisfaction, or compromise, instead of an account stated, as the court found. In this connection it is also argued that there is no evidence to support the court's finding that errors amounting to $3,091.00 in said written settlement occurred through a mutual mistake of facts by the parties. We cannot agree with counsel in these contentions.

According to the evidence General and Jewell were indebted to each other in varying amounts over the pe-

riod from 1951 to 1953 on joint installations of air conditioning equipment in certain business buildings in Hot Springs. In 1951 they were jointly involved in installations at the S. H. Kress Store and St. Joseph Hospital, which jobs were completed prior to December, 1951. Jewell kept inadequate records and did not furnish General with statements of its charges for labor and materials on these and subsequent jobs. In closing out the two contracts for accounting and income tax purposes on December 31, 1951, General estimated the amount due by it to Jewell on the two jobs at $3,000.00 and Jewell was credited with this amount on General's books. Jewell's continued failure to keep proper records or furnish General with statements of the amounts due it precluded a balancing of accounts from time to time. In the summer of 1953 the account had grown so large that General's president insisted upon a settlement. After some negotiations, General furnished Jewell with an itemized statement of what the latter owed it on September 25, 1953, and Jewell furnished General with a similar statement of the amount owing to Jewell on October 3, 1953.

On October 12, 1953, the parties entered into a written letter agreement settling the accounts between them. Each party accepted the account previously rendered to the other as stating the correct amounts due each other, except for a minor mathematical correction, and Jewell paid General $521.21, which represented the difference between the two accounts, in full settlement of the contracts specified in the letter agreement. At the time of the settlement, neither party recalled the $3,000.00 estimated credit given Jewell December 31, 1951, and this credit was overlooked and not taken into consideration in reaching the settlement. The result of this mutual mistake was to credit Jewell with $3,000.00 more than it was entitled to receive inasmuch as the charges under the Kress and St. Joseph Hospital contracts were included in the settlement. In the annual audit of General's books for 1953 which was completed in February or the early spring of 1954 the auditors discovered the $3,000.00 error and required General to set the amount back on its books

as a charge against Jewell. In June, 1954, General demanded payment of the $3,000.00 and also the sum of $91.00 represented by an additional error in Jewell's favor which appeared on the face of the Jewell statement of account used as a basis of the 1953 written settlement.

While Mr. and Mrs. Jewell testified they had no knowledge of the $3,000.00 error until June, 1954, they admitted that they noticed the discrepancy when General rendered statements to Jewell in January, 1952. It is also undisputed that each party accepted at face value the respective statements of account which formed the basis of the written settlement of October 12, 1953, and that neither party noticed or considered the $3,091.00 error at that time. While Mr. Jewell also testified the parties were still in dispute about certain items and that he waived his rights to certain profits in consideration of the settlement, we think a preponderance of the evidence supports the chancellor's conclusion that each party through mutual mistake thought it was receiving everything due it on the contracts involved in the written settlement and that neither consented to take less than what was actually due it in reaching the settlement of their respective accounts at that time.

We also hold that a preponderance of the evidence supports the trial court's finding that the letter agreement of October 12, 1953, constituted an account stated, and not an accord and satisfaction as contended by Jewell. An account stated has been defined as an account balanced and rendered with an assent to the balance, express or implied. *Brown* v. *Southern Grocery Co.*, 168 Ark. 547, 271 S. W. 342, 40 A. L. R. 383. We have also held that an account stated is only *prima facie* correct, and may be impeached for fraud, mistake or error. *Drake* v. *Howell*, 177 Ark. 1156, 9 S. W. 2d 565. In the early case of *Roberts* v. *Totten*, 13 Ark. 609, it was held that a court of equity will not suffer an account stated to be conclusive upon the parties where there has been any mistake, omission, fraud or undue advantage by which it is in truth vitiated and the balance is incorrectly stated.

See also, *St. Louis Cooperage Co.* v. *Jackson,* 121 Ark. 633, 182 S. W. 534; *Loewer* v. *Lonoke Rice Milling Co.,* 111 Ark. 62, 161 S. W. 1042.

An accord and satisfaction generally involves a contract whereby the debtor agrees to pay and the creditor to receive a different consideration or a sum less than the whole amount of the debt in satisfaction of the larger sum. As the textwriter says in C. J. S., Accord and Satisfaction, Sec. 1: "An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is, or considers himself, entitled to; and a 'satisfaction' is the execution, or performance, of such an agreement." In summarizing the court's conclusion in *McMillan, Administrator* v. *Palmer,* 198 Ark. 805, 131 S. W. 2d 943, Judge BAKER said: "In accord and satisfaction there are certain elements that must usually or ordinarily be considered. First, there is a disputed amount involved. Second, there is a consent to accept less than the claimed amount in settlement of the whole. In this case there was no dispute. There was an actual agreement upon the amount that should be paid. 1 Am. Jur., Accord and Satisfaction, §§ 19 and 30. 1 C. J. S., Accord and Satisfaction, §§ 1, 2 and 3. 1 R. C. L., Accord and Satisfaction, § 3." So here, we conclude that a preponderance of the evidence fails to show any dispute in the amounts owed by the parties or that Jewell consented to take less than what was actually due it under the contracts involved in the written letter agreement at the time of its execution.

Even if the settlement of October 12, 1953, constituted an accord and satisfaction, the authorities generally seem to hold that it may be rescinded if it was executed through a mutual mistake of material facts. 1 C. J. S., Accord and Satisfaction, Sec. 43; 1 Am. Jur., Accord and Satisfaction, Sec. 72; *Road Improvement Dist. No. 4 of Conway County, Ark.* v. *Wilkerson,* 5 Fed. 2d

416. However, we do not reach this question since we think the chancellor was correct in holding that the letter agreement of the parties merely constituted an account stated and not an accord and satisfaction.

Jewell finally contends the chancellor erred in refusing to hold that General was barred by laches or estoppel from maintaining the instant suit. Since neither laches nor estoppel was pleaded as a defense below, the court was not afforded an opportunity to pass on such issues and the attempt to raise them for the first time on appeal comes too late. *Gerard B. Lambert Co.* v. *Rogers,* 161 Ark. 307, 255 S. W. 1089; *Bell* v. *Lackie,* 210 Ark. 1003, 198 S. W. 2d 725; *Steele* v. *Steele,* 214 Ark. 500, 216 S. W. 2d 875.

Affirmed.