MOORE *v.* ROMMEL.

5-2443                                              350 S. W. 2d 190

Opinion delivered October 16, 1961.

*Rose, Meek, House, Barron, Nash & Williamson*, for appellant.

No brief filed for appellee.

CARLETON HARRIS, Chief Justice. Spring Creek Baptist Church of Benton contracted for certain work to be done by Benton Plumbing, Inc., on November 4, 1959. The total contract price was $18,105.95. According to the stipulation between the parties, the work was abandoned by Benton Plumbing, and it became necessary for the church to subsequently make other arrangements to have

the job completed. Benton Plumbing obtained the materials used in the project from Crane Supply Company at a cost of $6,182.89, for which Crane was not paid. Crane instituted suit against Benton Plumbing, Inc., and the Trustees of the Spring Creek Baptist Church on September 16, 1960, praying judgment against both defendants for such sum, and asking a lien upon the church property. Four days later, Crane amended its complaint, alleging that Benton Plumbing, Inc., had been dissolved as a corporation; that Morris W. Rommel, Lucile Rommel, and A. G. Hockersmith, Jr., were trustees of Benton Plumbing, Inc.; that they should be made party defendants, and judgment was prayed against them. The trustees of the church filed an answer, and a counterclaim against the Rommels,[1] alleging that the charter of Benton Plumbing, Inc., had been revoked on February 1, 1959, and that Hockersmith and the Rommels had operated the plumbing business as partners; that the payments made by the church to the Rommels had been made for the purpose of discharging any indebtedness due for materials delivered to the job site, and that the Rommels, and Benton Plumbing Company "are liable in damages to the counter-claimants for the mis-application of said funds and for their failure to pay any or all of the statements of Crane Supply Company for materials furnished to the job site." On December 22, 1960, the cause came on for hearing, and all parties, Crane Supply Company, the trustees of the Spring Creek Baptist Church, and Morris W. Rommel and Lucile Rommel, appeared by their respective attorneys. All then entered into a stipulation, wherein it was stipulated that Crane furnished the materials as alleged, and that same were placed upon the property owned by Spring Creek; that the materials were invoiced to Benton Plumbing, Inc.; that Crane was due the amount of $6,182.89, for which it was entitled to a lien on the land and improvements belonging to the church; that the church paid

---

[1] A. G. Hockersmith, Jr., died on or about July 23, 1960. The court subsequently, in its decree, found that Hockersmith (here, the initials used were "H. E.") had not been served with summons prior to his death, and his Personal Representative had not been made a party to the action.

Crane said amount in open court, satisfying the lien in full. Judgment was entered in favor of the trustees of the Spring Creek Baptist Church against Benton Plumbing Company, Inc., in the amount of $4,051.85,[2] but the court retained jurisdiction to decide at a later date whether the church was entitled to a judgment against the Rommels in their individual capacities. On February 2, 1961, the parties (Spring Creek Baptist Church and Morris W. Rommel and Lucile Rommel), through counsel, entered into a further stipulation, and after argument, the court dismissed the trustees' counterclaim against the Rommels. From the decree so entered, appellants bring this appeal. For reversal, appellants rely upon a single point, *viz.*:

"Since Benton Plumbing, Inc.'s authority as an Arkansas corporation was revoked on February 1, 1959, pursuant to Section 84-1841, Ark. Stats. (1960 Replacement), the Court erred in holding that Morris W. Rommel and Lucile Rommel were not liable as partners for indebtedness incurred in the name of Benton Plumbing, Inc., subsequent to February 1, 1959, and prior to the date when the delinquent franchise tax was paid."

The following facts, as reflected by the stipulation, are pertinent to the determination of the issue herein.

1. Benton Plumbing, Inc., was organized as an Arkansas Corporation on August 16, 1954, the incorporators being Morris W. Rommel, Lucile Rommel, and A. G. Hockersmith, Jr. At the time the work was performed for Spring Creek Baptist Church, the original

---

[2] This figure is explained by a stipulation, entered into at a subsequent hearing on February 2, 1961. Such stipulation provides as follows: "The total contract price was $18,105.95. Thereafter, the trustees of the church paid to the Benton Plumbing, Inc., $13,262.02, leaving a balance of $4,843.93. (It is understood that the Spring Creek Church is not stipulating that the Benton Plumbing was operating as a corporation under the authority of the State of Arkansas.) At the time the work was abandoned, other work had to be completed on the job totaling $2,712.00. In other words, it cost the church $2,712.00 to finish the job that was to be performed by Benton Plumbing, Inc. Thus, of the amount withheld by the church ($4,843.93)) the church spent $2,712.00 in completing the job, leaving a balance of $2,131.93, which the church retained to apply against the lien. After deducting the $2,131.93 retained by the church from the amount of the lien, there is a loss to the church of $4,051.89."

incorporators were the sole owners of stock in the corporation.

2. On February 1, 1959, under the authority of Act 304 of the General Assembly of 1953,[3] the Governor issued his proclamation proclaiming all corporations which had been certified as delinquent in payment of the Franchise Tax "to have forfeited all rights to do business in this State, and to be dissolved or withdrawn, as the case may be." This included Benton Plumbing, Inc.

3. The contract between the Spring Creek Baptist Church and Benton Plumbing, Inc., was entered into on November 4, 1959.

4. Suit was instituted against Benton Plumbing and Spring Creek by Crane on September 16, 1960, and against the Rommels on September 20, 1960. Spring Creek filed its counterclaim against the Rommels on September 28, 1960.

5. The franchise tax for the years 1958, 1959, and 1960, in the amount of $41.25, was paid to the State of Arkansas on December 19, 1960, the receipt showing that said sum was received from "Benton Plumbing, Inc."

Let us first consider the status of the corporation after paying its delinquent tax. Relative thereto, Section 84-1841, Ark. Stats. (1960 Replacement), provides:

"Provided, any corporation which has had its charter or authority to do business in the State declared forfeited by proclamation of the Governor may be reinstated to all its rights, powers and property upon filing with the Commissioner all delinquent franchise tax reports and payment of all taxes and penalties due for each year of delinquency, such taxes and penalties to be computed in the same manner as though such corporate charter or authority had not been declared forfeited.

---

[3] This Act provides for the forfeiture of the charter of all corporations, both foreign and domestic, that are delinquent in the payment of the annual franchise tax.

Upon filing with the Secretary of State, or other official who issued original corporate charter or authority, the receipt of the Commissioner, or the Attorney General, showing the payment by the corporation of all amounts due, as hereinabove provided, the Secretary of State, or such other official, shall strike the name of such corporation from the list of corporations whose charters or authorities have been declared forfeited in any proclamation of the Governor. *Thereafter*,[4] such corporation shall stand in all respects as though its name had never been included in any such proclamation, and the corporation and the Commissioner shall be advised of such reinstatement by the reinstating official or agency.''

We think the key word is the italicized one appearing therein. In other words, Benton Plumbing, Inc., was restored to its former corporate status as of December 19, 1960. Since the Governor's proclamation was issued on February 1, 1959, Benton Plumbing Company did not enjoy corporate status at the time it entered into the contract with the Spring Creek Baptist Church (November 4, 1959). Incidentally, the tax not being paid until after the complaints had been filed, it would appear that the payment was made as a matter of defense to personal liability. In *Clarke Estate Co.* v. *Gentry, et al,* 362 Mo. 80, 240 S. W. 2d 124 (1951), the issues were the right of a corporation, the charter of which had been forfeited, to file and maintain a suit in its own name and as a corporation, and the effect of rescission of the forfeiture. The company's charter had been forfeited by the Secretary of State for failure to file the annual registration report, financial statement, anti-trust affidavit, and failure to pay the annual registration fee. Some years later, the Secretary of State issued his ''Certificate of Rescission of Forfeiture'' certifying that the forfeiture entered was ''this day rescinded, and said corporation restored to good standing on the records of this department.'' From the opinion:

---

[4] Emphasis supplied.

"It is the company's position that the rescission 'vested plaintiff with a continuing existence from the origin of the corporation to the day of the rescission;' that 'plaintiff has but one charter and one continuous life;' and that the rescission 'extinguished and obliterated the forfeiture as effectively as if it had never been made and automatically restored the corporation *ab initio* to the same position as it was prior to the forfeiture; it wiped out the dissolution completely.' The company says that the rescission 'vested the plaintiff with continuing existence from the date of its origin, and validated all corporate action as effectively as if there had been no forfeiture. All effects and *sequalae* of the temporary cessation were erased. There has been but one corporation, in whose existence there has been no legal hiatus.'

"We do not agree. The words 'rescission,' 'rescind' and 'rescinded' in the statutes above referred to cannot be so interpreted. The rule is that, in the absence of clear legislative intent to the contrary, the effect of statutes is prospective only.    *    *    *

"We rule here that the rescission was prospective only and that the company's revived right to sue did not relate back to the time of the forfeiture,    *    *    *."

We hold in the case before us, that the payment of the tax did not restore Benton Plumbing Company to its corporate status as of the time it first became delinquent, but only restored it to that status as of December 19, 1960, the time of payment of the tax.

It is true that appellants thought they were dealing with a corporation, but estoppel was not pleaded.[5] The defense of estoppel is one that must be especially pleaded. See *Gerard B. Lambert Co.* v. *Rogers,* 161 Ark. 307, 255 S. W. 1089.

We have concluded that appellees are personally liable to appellants. According to the stipulation, Morris Rommel and wife were two of the three incorporators of Benton Plumbing, and at the time the work was per-

---

[5] Nor is it raised here; in fact, no brief has been filed by appellees.

formed, the original incorporators were the sole owners of stock in such corporation. In *Fletcher, Cyclopedia Corporations,* Vol. 13A, § 6650, in a discussion of the liability of members of a non-exsiting corporation, we find:

"There is a conflict in the decisions as to the liability of members who have not actively participated in the business. Some courts hold that the members of the purported corporation are not individually liable as partners, because of their membership merely, on a contract made by its officers or agents, since no such relation or liability is contemplated by them, and that, in the absence of a statute imposing individual liability upon them, the only remedy is against the officers or agents who made the contract."[6]

It is not necessary, in the present instance, that we discuss the possible liability of ordinary stockholders not participating in the business, since appellees do not come within that category; nor is any such defense raised by pleadings filed in response to the counterclaim of appellees, nor the stipulation entered into through their counsel. No contention is made that the Rommels did not make the contract or receive the money; they rely solely upon the alleged corporate standing of Benton Plumbing.

For the reasons herein set out, the decree of the Saline Chancery Court is reversed and the cause remanded with directions to enter judgment in favor of appellants, the trustees of Spring Creek Baptist Church, against appellees, Morris W. Rommel and Lucile Rommel, jointly and severally.

It is so ordered.

---

[6] Several Arkansas cases are then cited.